# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF FLORIDA
### PENSACOLA DIVISION

**JEFFERY PERKINS,**

      **Petitioner,**

**v.**                                   **Case No.  3:12cv282/LC/CJK**

**MICHAEL D. CREWS,[1]**

      **Respondent.**

_____/

## ORDER and
## REPORT AND RECOMMENDATION

    Before the court is a petition for writ of habeas corpus filed under 28 U.S.C. § 2254.  (Doc. 1).  Respondent filed an answer, submitting relevant portions of the state court record.  (Doc. 10).  Petitioner has not replied, although invited to do so. (*See* Doc. 12).  The matter is referred to the undersigned magistrate judge for report and recommendation pursuant to 28 U.S.C. § 636 and N.D. Fla. Loc. R. 72.2(B). After careful consideration of all issues raised by petitioner, the undersigned concludes that no evidentiary hearing is required for the disposition of this matter. Rule 8(a) of the Rules Governing Section 2254 Cases in the United States District

---

[1]Michael D. Crews succeeded Edwin G. Buss and Kenneth S. Tucker as Secretary of the Florida Department of Corrections, and is automatically substituted as the respondent.  Fed.R.Civ.P. 25(d).

Courts. The undersigned further concludes that the pleadings and attachments before the court show that petitioner is not entitled to federal habeas relief, and that the petition should be denied.

## BACKGROUND AND PROCEDURAL HISTORY

In 2007, petitioner was charged in two separate cases filed in the Circuit Court for Okaloosa County, Florida. In Case No. 07-CF-2319, petitioner was charged with Kidnaping without a Weapon (a first-degree felony punishable by life) (Count 1), Carjacking without a Weapon (a first-degree felony) (Count 2), and Attempted Robbery without a Weapon (a third-degree felony) (Count 3). (Doc. 10, Ex. C, p. 21).[2] In Case No. 07-CF-2785, petitioner was charged with Grand Theft - $300 or more but less than $5,000 (a third-degree felony) (Count 1) and two counts of Dealing in Stolen Property (second-degree felonies) (Counts 2 and 3). (Ex. C, p. 256). On December 4, 2008, petitioner entered a counseled no contest plea to each count as charged in both cases, pursuant to a negotiated plea agreement memorialized in writing. (Ex. C, pp. 65-68). The plea agreement provided, in relevant part, that in exchange for petitioner's no contest plea, petitioner would be sentenced as an habitual felony offender to no more than 30 years imprisonment, with the sentences in his two cases running concurrently. The plea agreement provided that petitioner would argue mitigating factors at sentencing, and that if the court deemed appropriate, petitioner could be sentenced to less than 30 years. (*Id.*).

On December 4, 2008, the trial court accepted petitioner's plea after conducting a searching and extensive plea colloquy and determining that petitioner's plea was knowing and voluntary. (Ex. G, pp. 19-30). On March 9, 2009, the court held a

---

[2]All references to exhibits are to those provided at Doc. 10, unless otherwise noted.

sentencing hearing and, after considering the information contained in the presentence investigation report and petitioner's arguments in mitigation, sentenced petitioner as an habitual felony offender to thirty years imprisonment on Counts 1 and 2 of Case No. 07-2319 and Counts 2 and 3 of Case No. 07-2785; and to ten years imprisonment on Count 3 of Case No. 07-2319 and Count 1 of Case No. 07-2785, with the sentence on each count in each case to run concurrent with the others.  (Ex. C, pp. 229-48).  Judgment was rendered April 13, 2009.  (Ex. C, pp. 169-78). Petitioner was granted an out-of-time appeal by the Florida First District Court of Appeal ("First DCA") on November 20, 2009, with the provision that upon issuance of the mandate, a copy of the opinion would be provided to the clerk of the circuit court for treatment as a notice of appeal.  (Ex. C, p. 219).  The mandate issued December 16, 2009.  (Ex. C, p. 223).  On August 16, 2010, petitioner filed a notice of voluntary dismissal of the appeal.  (Ex. D).  Petitioner's appeal was dismissed on August 20, 2010, pursuant to petitioner's voluntary dismissal.  (Ex. E).

On March 3, 2011, petitioner filed a motion for postconviction relief under Florida Rule of Criminal Procedure 3.850.  (Ex. G, pp. 1-7).  In an order issued May 18, 2011, the circuit court summarily denied relief without an evidentiary hearing. (*Id*., pp. 11-31).  The First DCA per curiam affirmed without a written opinion, *Perkins v. State*, 75 So. 3d 273 (Fla. 1st DCA 2011) (Table) (copy at Ex. J), with the mandate issuing December 21, 2011.  (Ex. M).

Petitioner filed his federal habeas petition in this court on June 12, 2012.  (Doc. 1, p. 15).  The petition presents one ground for relief:  that petitioner's plea is involuntary because it was induced by trial counsel's promise that petitioner would receive no more than a fifteen-year sentence.  Respondent argues that petitioner is not

entitled to federal habeas relief, because his claim is without merit.  (Doc. 10, pp. 7-13).

## SECTION 2254 STANDARD OF REVIEW

Federal courts may issue habeas corpus relief for persons in state custody pursuant to 28 U.S.C. § 2254, as amended by the Anti-Terrorism and Effective Death Penalty Act of 1996 (AEDPA).  Pub. L. 104-132, § 104, 110 Stat. 1214, 1218-19. Section 2254(d) provides, in relevant part:

> (d)  An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
> (1)  resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2)  resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d) (2011).

The United States Supreme Court explained the framework for § 2254 review in *Williams v. Taylor*, 529 U.S. 362, 120 S. Ct. 1495, 146 L. Ed. 2d 389 (2000).[3]  The appropriate test was described by Justice O'Connor as follows:

---

[3]Unless otherwise noted, references to *Williams* are to the majority holding, written by Justice Stevens for the Court (joined by Justices O'Connor, Kennedy, Souter, Ginsburg, and Breyer) in parts I, III, and IV of the opinion (529 U.S. at 367-75, 390-99); and Justice O'Connor for the Court (joined by Justices Rehnquist, Kennedy, Thomas, and – except as to the footnote – Scalia) in part II (529 U.S. at 403-13).  The opinion of Justice Stevens in Part II was joined by Justices Souter, Ginsburg, and Breyer.

Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

*Id.*, 529 U.S. at 412-13 (O'Connor, J., concurring).

Employing the *Williams* framework, on any issue raised in a federal habeas petition upon which there has been an adjudication on the merits in a state court proceeding, the federal court must first ascertain the "clearly established Federal law," namely, "the governing legal principle or principles set forth by the Supreme Court at the time the state court render[ed] its decision." *Lockyer v. Andrade*, 538 U.S. 63, 71-72, 123 S. Ct. 1166, 155 L. Ed. 2d 144 (2003). The law is "clearly established" only when a Supreme Court holding at the time of the state court decision embodies the legal principle at issue. *Thaler v. Haynes*, 559 U.S. 43, 130 S. Ct. 1171, 1173, 175 L. Ed. 2d 1003 (2010); *Bowles v. Sec'y for Dep't of Corr.*, 608 F.3d 1313, 1315 (11th Cir. 2010).

After identifying the governing legal principle(s), the federal court determines whether the state court adjudication is contrary to the clearly established Supreme Court case law. The adjudication is not contrary to Supreme Court precedent merely because it fails to cite to that precedent. Rather, the adjudication is "contrary" only if either the reasoning or the result contradicts the relevant Supreme Court cases. *Early v. Packer*, 537 U.S. 3, 8, 123 S. Ct. 362, 154 L. Ed. 2d 263 (2002) ("Avoiding th[e] pitfalls [of § 2254(d)(1)] does not require citation to our cases – indeed, it does not even require *awareness* of our cases, so long as neither the reasoning nor the

result of the state-court decision contradicts them."). If the state court decision is contrary to clearly established federal law, the federal habeas court must independently consider the merits of the petitioner's claim. *See Panetti v. Quarterman*, 551 U.S. 930, 954, 127 S. Ct. 2842, 168 L. Ed. 2d 662 (2007).

If the state court decision is not contrary to clearly established federal law, the federal habeas court next determines whether the state court "unreasonably applied" the governing legal principles set forth in the Supreme Court's cases. The federal court defers to the state court's reasoning unless the state court's application of the legal principle(s) was "objectively unreasonable" in light of the record before the state court. *Williams*, 529 U.S. at 409; *see Holland v. Jackson*, 542 U.S. 649, 652, 124 S. Ct. 2736, 159 L. Ed. 2d 683 (2004) (per curiam); *cf. Bell v. Cone*, 535 U.S. 685, 697 n. 4, 122 S. Ct. 1843, 152 L. Ed. 2d 914 (2002) (declining to consider evidence not presented to state court in determining whether its decision was contrary to federal law). An objectively unreasonable application of federal law occurs when the state court "identifies the correct legal rule from Supreme Court case law but unreasonably applies that rule to the facts of the petitioner's case" or "unreasonably extends, or unreasonably declines to extend, a legal principle from Supreme Court case law to a new context." *Putman v. Head*, 268 F.3d 1223, 1241 (11th Cir. 2001). A state court, however, may "decline to apply a specific legal rule that has not been squarely established by [the Supreme Court]" without running afoul of the "unreasonable application" clause. *Knowles v. Mirzayance*, 556 U.S. 111, 122, 129 S. Ct. 1411, 173 L. Ed. 2d 251 (2009).

When faced with a state appellate court's summary affirmance of a trial court's decision, the "unreasonable application" standard focuses on the state court's ultimate

conclusion, not the reasoning that led to it. *See Gill v. Mecusker*, 633 F.3d 1272, 1287 (11th Cir. 2011) (*citing Harrington v. Richter*, — U.S. —, 131 S. Ct. 770, 786, 178 L. Ed. 2d 624 (2011)). The federal court must determine what arguments or theories supported or could have supported the state court's decision, and then ask whether it is possible that fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior Supreme Court decision. *See Richter*, 131 S. Ct. at 786; *see also Gill*, 633 F.3d at 1292 (holding that the federal district court may rely on grounds other than those articulated by the state court in determining that habeas relief was not warranted, so long as the district court did not err in concluding that the state court's rejection of the petitioner's claims was neither an unreasonable application of a Supreme Court holding nor an unreasonable determination of the facts). In sum, "[a]s a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim . . . was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Richter*, 131 S. Ct. at 786-87.

Section 2254(d) also allows federal habeas relief for a claim adjudicated on the merits in state court where that adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). As with the "unreasonable application" clause, the federal court applies an objective test. *Miller-El v. Cockrell*, 537 U.S. 322, 340, 123 S. Ct. 1029, 154 L. Ed. 2d 931 (2003) (holding that a state court decision based on a factual determination "will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state

court proceeding."). The "unreasonable determination of the facts" standard is implicated only to the extent the validity of the state court's ultimate conclusion is premised on unreasonable fact finding. *See Gill*, 633 F.3d at 1292.

When performing review under § 2254(d), the federal court presumes that all factual determinations made by the state court are correct. 28 U.S.C. § 2254(e)(1). The petitioner bears "the burden of rebutting the presumption of correctness by clear and convincing evidence." *Id.*; *see, e.g., Miller-El*, 537 U.S. at 340 (explaining that a federal court can disagree with a state court's factual finding and, when guided by AEDPA, "conclude the decision was unreasonable or that the factual premise was incorrect by clear and convincing evidence"). Neither the Supreme Court nor the Eleventh Circuit has interpreted how § 2254(d)(2) and §2254(e)(1) interact in the context of fact-based challenges to state court adjudications. *Cave v. Sec'y for Dep't of Corr.*, 638 F.3d. 739 (11th Cir. 2011). However, the Eleventh Circuit recently declined to grant habeas relief under § 2254(d)(2) in the context of a state appellate court's summary affirmance, where it found that the validity of the state court decision was not premised on the trial court's unreasonable fact finding, and that the petitioner failed to demonstrate "by clear and convincing evidence that the record reflect[ed] an insufficient factual basis for affirming the state court's decision." *Gill*, 633 F.3d at 1292.

Only if the federal habeas court finds that the petitioner satisfied AEDPA and § 2254(d), does the court take the final step of conducting an independent review of the merits of the petitioner's claims. *See Panetti*, 551 U.S. 930, 954, 127 S. Ct. 2842. Even then, the writ will not issue unless the petitioner shows that he is in custody "in violation of the Constitution or laws and treaties of the United States." 28 U.S.C.

§ 2254(a). "If this standard is difficult to meet, that is because it was meant to be." *Richter*, 131 S. Ct. at 786.

DISCUSSION

Petitioner claims his plea is involuntary because it was induced by trial counsel's promise that petitioner would receive no more than a fifteen-year sentence. Petitioner alleges that counsel's "promise" occurred during a discussion he and counsel had just prior to petitioner entering his plea, wherein trial counsel "assured/promised" petitioner that "if he pled open, she had spoken to the Judge, and he wouldn't receive a sentence in excess of fifteen (15) years." (Doc. 1, p. 5). Petitioner alleges that counsel supported her promise by showing petitioner a letter she wrote to the judge asking the judge to "'depart downward, and give him a suspended sentence of the minimum guidelines of 111 months.'" (*Id.*, p. 6).

The parties agree that petitioner presented this claim to the state court in his Rule 3.850 motion, and that the state court denied relief on the merits. (Doc. 1, pp. 7-8; Doc. 10, pp. 10-11).

A.     Clearly Established Federal Law

In determining the validity of a plea to a criminal charge, a plea of nolo contendere stands on equal footing with a guilty plea. *North Carolina v. Alford*, 400 U.S. 25, 35-36, 91 S. Ct. 160, 27 L. Ed. 2d 162 (1970); *Hudson v. United States*, 272 U.S. 451, 47 S. Ct. 127, 129, 71 L. Ed. 347 (1926); *see also Florida v. Royer*, 460 U.S. 491, 495 n.5, 103 S. Ct. 1319, 1323 n.5, 75 L. Ed. 2d 229 (1983) (recognizing that "[u]nder Florida law, a plea of *nolo contendere* is equivalent to a plea of guilty."). "A guilty plea is an admission of criminal conduct as well as the waiver of the right to trial." *Finch v. Vaughn*, 67 F.3d 909, 914 (11th Cir. 1995) (*citing Brady*

*v. United States*, 397 U.S. 742, 748, 90 S. Ct. 1463, 1469, 25 L. Ed. 2d 747 (1970)). "Waivers of constitutional rights not only must be voluntary but must be knowing, intelligent acts done with sufficient awareness of the relevant circumstances and likely consequences." *Brady* at 748. Accordingly, in the context of a guilty plea the standard for determining the validity of the plea is "whether the plea represents a voluntary intelligent choice among the alternative courses open to the defendant." *North Carolina v. Alford*, 400 U.S. at 31, 91 S. Ct. 160; *Boykin v. Alabama*, 395 U.S. 238, 242, 89 S. Ct. 1709, 23 L. Ed. 2d 274 (1969). The assistance of counsel received by a defendant is relevant to the question of whether a defendant's guilty plea was knowing and intelligent insofar as it affects the defendant's knowledge and understanding. *See McMann v. Richardson*, 397 U.S. 759, 770-71, 90 S. Ct. 1441, 1448-49, 25 L. Ed. 2d 763 (1970).

When a petitioner challenges the voluntariness of his plea based upon allegations of ineffective assistance of counsel, the two-prong standard set forth in *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), applies. *Hill v. Lockhart*, 474 U.S. 52, 58, 106 S. Ct. 366, 370, 88 L. Ed. 2d 203 (1985); *see also Premo v. Moore*, — U.S. —, 131 S. Ct. 733, 737-38, 178 L. Ed. 2d 649 (2011) (identifying *Strickland* as the clearly established federal law governing a habeas petitioner's challenge to his conviction obtained through a plea bargain). To obtain relief under *Strickland*, a petitioner must establish that: (1) "counsel's representation fell below an objective standard of reasonableness," and (2) "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694.

The focus of *Strickland*'s performance prong in a plea situation is "whether counsel's advice 'was within the range of competence demanded of attorneys in criminal cases.'" *Hill*, 474 U.S. at 56-57 *(quoting McMann v. Richardson*, 397 U.S. at 771, 90 S. Ct. 1441). "Judicial scrutiny of counsel's performance must be highly deferential," and courts should make every effort to "eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Strickland* at 689. Representation is ineffective only if counsel commits "serious derelictions" of his duty when advising the accused regarding the plea. *Stano v. Dugger*, 921 F.2d 1125, 1150-51 (11th Cir. 1991) *(citing McMann*, 397 U.S. at 774; *Tollett v. Henderson*, 411 U.S. 258, 267, 93 S. Ct. 1602, 36 L. Ed. 2d 235 (1973); *Hill*, 474 U.S. at 56).

To meet *Strickland*'s prejudice prong in a plea situation, petitioner must establish that "counsel's constitutionally ineffective performance affected the outcome of the plea process." *Hill*, 474 U.S. at 59. "It is not enough for [petitioner] to show that the errors had some conceivable effect on the outcome of the proceeding." *Strickland*, 466 U.S. at 693. Petitioner must demonstrate a reasonable probability that, but for counsel's errors, he would not have pled guilty and would have insisted on going to trial. *Id.*, 474 U.S. at 58-59.

When a district court considers a habeas petition, the state court's findings of historical facts in the course of evaluating an ineffectiveness claim are subject to the presumption of correctness, while the performance and prejudice components are mixed questions of law and fact. *Strickland*, 466 U.S. at 698; *Collier v. Turpin*, 177 F.3d 1184, 1197 (11th Cir. 1999). "Surmounting *Strickland*'s high bar is never an easy task." *Padilla v. Kentucky*, 559 U.S. 356, 130 S. Ct. 1473, 1485, 176 L. Ed. 2d

284 (2010). "Establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult." *Richter*, 131 S. Ct. at 788. As the *Richter* Court explained:

> The standards created by *Strickland* and § 2254(d) are both "highly deferential," and when the two apply in tandem, review is "doubly" so. The *Strickland* standard is a general one, so the range of reasonable applications is substantial. Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard.

*Id*. (citations omitted).

B.     Federal Review of State Court Decision

The state court's order provides, in relevant part:

> A claim of ineffective assistance of trial counsel is reviewed under the test as outlined in *Strickland v. Washington*, 466 US 668 (1984). Under this standard, a defendant is not entitled to relief unless he can show that his attorney's performance was both deficient and that he was prejudiced by the alleged deficiency.
>
> **Ground I** – The Defendant first claims that his trial attorney erred by telling him that he would "receive no more than 15 years" imprisonment if he agreed to enter a plea. The signed written plea agreement, however, notes that the Defendant was facing a sentence of up to thirty years imprisonment as an HFO. In addition, at the plea hearing the Court ensured that the Defendant understood that he was facing maximum sentence of thirty years DOC. The Defendant said that he understood the sentencing consequences and that no one had threatened or promised him anything to enter the plea. The Defendant admitted at sentencing that, even though he was facing a thirty year maximum, it was far less than the potential maximum sentence he was facing without a cap in place. Since the claim is contradicted by the

record, this claim is denied without the need for an evidentiary hearing.
(Ex. G, pp. 12-13).

Petitioner concedes that the state court correctly identified *Strickland v. Washington*, as the controlling legal standard. (Doc. 1, p. 7). Petitioner argues that the state court unreasonably applied *Strickland* when it denied relief without an evidentiary hearing, because "the record of the state court proceedings are in conflict with the sworn allegations of the petition" which, taken as true, entitle petitioner to relief. (*Id.*, pp. 10-11). Petitioner argues that the state court violated clearly established Federal law when it relied on his statements at the plea colloquy to determine that petitioner's allegations were conclusively rebutted by the record. (*Id.*, p. 11). Petitioner asserts that his case is identical to *State v. Leroux*, 689 So. 2d 235 (Fla. 1996). In *Leroux*, the defendant entered a guilty plea to second-degree murder with a firearm pursuant to a negotiated plea agreement providing for a fifteen year sentence. After Mr. Leroux was convicted and sentenced to fifteen years in prison, he filed a postconviction motion asserting that his plea was involuntary because it was based on counsel's advice that he would be released from prison in four years, advice which Leroux learned to be wrong after he entered the DOC. The Florida Supreme Court held that Mr. Leroux's's statement at the plea colloquy that no one had "threatened him or promised him anything to enter the plea" did not conclusively refute his postconviction assertion that his negotiated plea was a product of trial counsel's alleged erroneous advice concerning the actual time he would serve in prison. *See Leroux*, 689 So. 2d at 237 ("[T]here may be a difference between asking a defendant whether anything was promised to get the Defendant to agree to a plea, and asking whether any additional promises were made to the defendant concerning

the terms of the plea apart from those discussed during the taking of the plea." (internal quotation marks and citation omitted)).

The state court did not unreasonably apply the *Strickland* standard in rejecting petitioner's claim. In *Blackledge v. Allison*, 431 U.S. 63, 97 S. Ct. 1621, 52 L. Ed. 2d 136 (1977), the Supreme Court stated:

> [T]he representations of the defendant, as well as any findings by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings. Solemn declarations in open court carry a strong presumption of verity. The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible.

*Id.*, 431 U.S. at 73-74; *see also United States v. McCord*, 618 F.2d 389, 393 (5th Cir. 1980) ("[A] defendant ordinarily will not be permitted to refute testimony given under oath at a plea or sentencing hearing.").

Unlike the facts of *Leroux*, the alleged promise made by trial counsel here concerned the sentence petitioner would receive – a term of petitioner's plea that was explicitly addressed in petitioner's written plea agreement and at his plea proceeding. The portion of the plea agreement titled "Terms of Plea Entry and Sentencing Agreement Agreed Upon By The State and Defendant" states as to petitioner's sentence: "CAP of 30 (Thirty) years DOC and as HFO - no more than 30 years total. D to argue mitigating factors at sentencing." (Ex. C ,p. 65). Petitioner went on to certify in his written plea agreement:

> I am satisfied with the attorney's advice and services and my attorney has not compelled or induced me to enter into this plea agreement by any force, duress, threats or pressure. Also, my attorney, the court and the prosecutor have not made any promises nor have I relied on any representations as to the actual time I would serve in

entering this plea agreement if I were to be incarcerated under the terms of the agreement.

(Ex. G, p. 15). In a later section of petitioner's written plea agreement titled "Acknowledgment of Defendant," petitioner certified: "I am satisfied with the attorney's advice and service and my attorney has not compelled or induced me to enter into this plea agreement by any force, duress, threats, pressure or promises." (*Id.*, p. 16).

Petitioner's sentence under the terms of the plea agreement was discussed at petitioner's plea proceeding:

> MS. CLAPP [defense counsel]: Your Honor, Jeffery Perkins stands before the Court at this time in Case Number 07CF2319 and 2785. He hereby withdraws his previously tendered plea of not guilty and enters one of nolo contendere to all counts in both cases.
>
> The agreement that we've reached with the State is we're pleading to a cap of 30 years DOC and of an HFO. That HFO status is part of the cap, which means the Court can sentence him to no more than 30 years as HFO at sentencing if the Court so wishes, but the Court can always sentence him to something less than that. The Defense is to argue mitigating factors at sentencing. He's to be adjudicated guilty and we're requesting a PSI.
>
> MR. ELMORE [prosecutor]: That's the State's agreement, Judge.
>
> THE COURT: All right. Mr. Perkins, raise your right hand for me, please. Do you swear or affirm to testify truthfully in this matter under penalties of perjury?
>
> THE DEFENDANT: Yes, sir.
>
> THE COURT: All right, sir. You can put your hand down. Did you hear what Ms. Clapp had to say?

THE DEFENDANT:  Yes, your Honor.

THE COURT:  I noticed that you were out there talking to her at some length before you stepped up here.

THE DEFENDANT:  Yes, sir.

THE COURT:  Is that what you expected to happen after all this conversation?

THE DEFENDANT:  Yes, your Honor.

THE COURT:  And did you sign this written plea she gave me?

THE DEFENDANT:  I did.

THE COURT:  How old are you, sir, and how far did you go in school?

THE DEFENDANT:  Forty-eight years old.  I went to the eighth grade.

THE COURT:  Are you able to read and understand this plea Agreement?

THE DEFENDANT:  Pretty much.

THE COURT:  Okay.  How much is pretty much?

THE DEFENDANT:  I can understand it.

THE COURT:  Okay.  Did you read it and understand it before you signed it?

THE DEFENDANT:  Yes, I did.

THE COURT:  Does it contain all the terms and conditions your lawyer

just announced?

THE DEFENDANT:  Yes, sir.

THE COURT:  Do you understand by this plea agreement that you're pleading no contest to these charges?

THE DEFENDANT:  Yes, sir.

. . . .


THE COURT:  Do you understand the penalty that you might face as a result of this plea agreement?

THE DEFENDANT:  Yes, your Honor.

THE COURT:  And what is that?

THE DEFENDANT:  A 30 year cap.

THE COURT:  Have you been threatened in any way or promised anything to get you to make this plea?

THE DEFENDANT:  No, sir.

THE COURT:  Have you had enough time to talk to Ms. Clapp about all of this?

THE DEFENDANT:  Yes, sir.

THE COURT:  Has she answered all your questions about this plea agreement?

THE DEFENDANT:  Yes, sir.

THE COURT: And you're satisfied with what she's done for you?

THE DEFENDANT: Yes, sir.

THE COURT: What brought you to make the decision to waive your right to a trial by jury and make this plea today?

THE DEFENDANT: I think it's in my best interest, your Honor.

THE COURT: What does that mean to you? Explain to me what you mean when you say that.

THE DEFENDANT: Well, from what I understand, the charges that I've got carries a lot more time than 30 years. That's why I think I benefit by signing a cap.

THE COURT: So you think doing it this way is much better than going to trial?

THE DEFENDANT: Yes, sir.

THE COURT: All right. I'll accept the plea in this case.

(Ex. G, pp. 20-24). On January 10, 2009, defense counsel wrote the sentencing judge a letter reconfirming the parties' agreement as to petitioner's sentence, an agreement which counsel described as: "the State agreed to concurrent time on both cases, for a possible maximum sentence of 30 years, however the Defense is entitled to argue mitigating factors at sentencing, and if the court deems appropriate, the Court may sentence the Defendant to anything less than 30 years, including committing Mr. Perkins to the Florida State Hospital or ordering him to complete drug treatment." (Ex. C, p. 78). Counsel went on to argue in her letter:

> As indicated in the State's guidelines, Mr. Perkins scores a minimum State prison sentence of 115.3 months in the Department of Corrections. We are asking you for a downward departure based on the

fact that Mr. Perkins has serious medical conditions which will not be properly treated in prison, and Mr. Perkins wants help with drug addiction. This Court can give him the help he needs by granting him a suspended sentence of 115.3 months, order that he be transported to Florida State Hospital until such time as the hospital determines his health issues, both medical and physical, are under control, and then order that Mr. Perkins complete an in-house drug and alcohol program, such as the Phoenix House.

(*Id*., p. 79). Counsel provided petitioner a copy of the letter. (*Id*., p. 80).

At petitioner's sentencing hearing on March 9, 2009, defense counsel reiterated that petitioner pled to a cap of 30 years. Counsel requested that "the Court depart downward, give him a suspended sentence of the minimum guidelines of 115.3 months and sentence him to a term of probation with drug treatment or the Phoenix House." (Ex. C, pp. 231-32).

As the state postconviction court reasonably determined, petitioner's claim that his plea was induced by counsel's promise that he would be sentenced to no more than 15 years in prison, is conclusively refuted by petitioner's assertions in his written plea agreement and by petitioner's statements at the plea hearing. Petitioner argues that "Petitioner's response to the trial court asking him has he 'been threatened in any way or promised anything to get you to make this plea,' does not refute or answer the question whether any additional promises were made to him concerning the terms of the plea agreement." (Doc. 1, p. 12). The plea colloquy question and response to which petitioner refers is not the only statement in the record that belies petitioner's allegation of a promise that petitioner would get no more than fifteen years. To name just a few additional statements that refute petitioner's allegation, there is petitioner's acknowledgment in his written plea agreement that "my attorney has not compelled or induced me to enter into this plea agreement by any . . . pressure or promises;

petitioner's statements during the plea colloquy explaining his understanding of the sentence he could receive, and petitioner's statements at the plea colloquy explaining why he believed entering the plea was in his best interest. The state court record as a whole conclusively refutes petitioner's allegation that his plea was induced by counsel's promise that he would receive a more lenient sentence. Even the letter from defense counsel petitioner references demonstrates that petitioner knew defense counsel's arguments in mitigation were just that – arguments – and that he could get up to thirty years in prison.

Petitioner's final argument urges the court to deduce from petitioner's age at the time of his plea that counsel must have promised a more lenient sentence. Petitioner argues that he was 48 years old when he entered his plea, that a 30-year sentence to a 48-year old man "is a 'defacto' life sentence", and that "[t]here would be no difference between a 30-year sentence and a life sentence. As such, there realistically must have been something to make petitioner enter a plea, an open plea – with a 30 year cap, based upon his prior record, HFO status, and severity of the crimes. That something was counsel's promise of no more than 15 years." (Doc. 1, p. 13). This after-the-fact assertion flies in the face of petitioner's statements during the plea colloquy, where he explained that he considered the promise of a 30-year cap, in comparison to a possible life sentence if he went to trial and lost, to be a compelling reason to forgo a trial and enter his plea.

The state court's rejection of petitioner's claim was not contrary to *Strickland*, was not based on an unreasonable application of *Strickland*, and was not based on an unreasonable determination of the facts. Petitioner is not entitled to federal habeas relief.

CERTIFICATE OF APPEALABILITY

Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts provides: "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." If a certificate is issued, "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)." A timely notice of appeal must still be filed, even if the court issues a certificate of appealability. Rule 11(b), Rules Governing Section 2254 Cases.

The petitioner in this case fails to make a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 483-84, 120 S. Ct. 1595, 1603-04, 146 L. Ed. 2d 542 (2000) (explaining the meaning of this term) (citation omitted). Accordingly, the court should deny a certificate of appealability in its final order.

The second sentence of Rule 11(a) provides: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue." Rule 11(a), Rules Governing Section 2254 Cases. If there is an objection to this recommendation by either party, that party may bring such argument to the attention of the district judge in the objections permitted to this report and recommendation.

Accordingly, it is ORDERED:

The Clerk shall change the docket to reflect that Michael D. Crews has been substituted as the respondent in this cause.

And it is respectfully RECOMMENDED:

1. That the petition for writ of habeas corpus (doc. 1), challenging the judgment of conviction and sentence in *State of Florida v. Jeffery Scott Perkins* in the

Circuit Court for Okaloosa County, Florida, Case Nos. 07-CF-2319 and 07-CF-2785 be DENIED, and the Clerk be directed to close the file.

  2. That a certificate of appealability be DENIED.

  At Pensacola, Florida this 11th day of December, 2013.


     /s/ *Charles J. Kahn, Jr.*

     **CHARLES J. KAHN, JR.**
     **UNITED STATES MAGISTRATE JUDGE**


<u>NOTICE TO THE PARTIES</u>

Any objections to these proposed findings and recommendations must be filed within fourteen days after being served a copy hereof. <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.</u> A copy of any objections shall be served upon any other parties. Failure to object may limit the scope of appellate review of factual findings. *See* 28 U.S.C. § 636; *United States v. Roberts*, 858 F.2d 698, 701 (11th Cir. 1988).